FRANKIE JOHNSON, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 42862—251 S. W. (2d) 70.

Division Two, September 8, 1952.

*Mattingly, Boas & Richards* and *Lloyd E. Boas* for appellant.

*Gragg & Aubuchon, J. Edward Gragg* and *O. P. Owen* for respondent.

382

BOHLING, C.—Frankie Johnson recovered a judgment for $12,500 against the St. Louis Public Service Company, a corporation, for injuries sustained in a collision with a streetcar. Defendant appealed. Plaintiff submitted her case solely under the humanitarian doctrine on negligence of defendant in failing to warn of the approach of or to stop its streetcar. Defendant claims that plaintiff failed to make a submissible case; that improper argument, misconduct of the jury, and plaintiff's main instruction constituted reversible error, and that the damages are grossly excessive.

We take the testimony most favorable to plaintiff.

The accident happened on October 11, 1949, about 7:00 p. m., at or near the intersection of Thirty-ninth street and Cleveland avenue in the City of St. Louis, Misouri. The weather was described as "beautiful." Thirty-ninth is a north and south street, 40 feet wide, and Cleveland is an east and west street, 30 or 35 feet wide. Defendant maintains double streetcar tracks on Thirty-ninth street, with about 10 feet between the outside rail and the curb. Shenandoah avenue is one block south of Cleveland avenue and defendant's northbound Park avenue streetcars enter Thirty-ninth at Shenandoah, making a left-hand turn.

On the afternoon in question plaintiff, who had been a patient in a hospital for 3-½ years, went to Mrs. Mabel Frick's home, 3965 Cleveland avenue west of Thirty-ninth street, to make arrangments for a room. Mrs. Frick accompanied plaintiff when she left the Frick home. They proceeded east along the north side of Cleveland to Thirty-ninth and thence south, across Cleveland, to the southwest corner of Cleveland and Thirty-ninth. Here they talked until they saw a Park avenue streetcar turning onto Thirty-ninth at Shenandoah. Plaintiff intended to take passage on this car. They then parted. Mrs. Frick proceeded north across Cleveland and plaintiff east across Thirty-ninth. Plaintiff testified she proceeded east across Thirty-ninth street until she stepped over the first rail of the northbound tracks, where she stopped to permit two approaching northbound automobiles, one following the other and about 75 feet south of her, to pass. She placed said streetcar about 200 or 150 feet south of her at that time, and, looking in front of her, or east, saw the

automobiles pass her near or over the east rail of the northbound tracks. She did not see the streetcar again. She intended to go across after the automobiles passed, and did not know why she did not; and did not remember taking a step or two or moving after that. The next thing she remembered was when she regained consciousness in the hospital.

Ray H. Jones, defendant's motorman, was plaintiff's first witness. He testified that the streetcar overlaps the tracks; that he was looking ahead at all times as he approached Cleveland avenue, and that at no time were there any pedestrians in front of the streetcar. The first he knew of anything unusual occurring was when he heard a "thump on the left side of the streetcar and someone holloed I had hit something and I immediately stopped." The thump was from behind his position at the front of the streetcar. He stopped and for the first time saw plaintiff, who was then lying approximately in the center of the intersection. The headlights on the streetcar were on and he could see objects 80 feet ahead. The brakes were in good condition and he could stop the streetcar at the speed it was traveling, 15 miles an hour, in about 60 feet. He stopped with the back end of the streetcar just clear of Cleveland avenue. He testified Mrs. Frick stated at the scene that plaintiff "had run for the streetcar and was waving good-bye to her." Mrs. Frick denied making the statement.

There was also testimony by plaintiff, by Mrs. Frick, plaintiff's witness, and by Kenneth Harris, defendant's witness, from which a jury could find that no bell or gong was sounded.

Mrs. Mabel Frick testified she stepped down from the curb and had taken about four steps northwardly across Cleveland avenue when she heard a noise, saw plaintiff flying through the air, and, as nearly as she can remember, plaintiff landed on the southbound streetcar tracks north of the center of Cleveland and almost to the opposite sidewalk. After stating she did not remember whether the streetcar had stopped when she first saw plaintiff in the street, she also stated the streetcar had crossed Cleveland avenue when she saw plaintiff "land." She did not see anything strike plaintiff.

Kenneth Harris testified that he was a passenger on the streetcar and heard a "thud" on the left side of the streetcar when it was about to the corner, and the streetcar moved only about half the width of Cleveland avenue, where it stopped and blocked the traffic; that three boys on the rear seat and two girls about three seats up were passengers on the streetcar, and some older persons were seated near the center of the streetcar. He placed plaintiff [73] on the southbound tracks close to the southwest corner of the intersection after the accident.

Marylyn Smith, defendant's other witness, testifed the first she knew of the accident was when the streetcar stopped and that plain-

tiff was lying on the southbound streetcar tracks near the southwest corner. She was seated in the third seat from the rear of the streetcar.

Defendant's position is that at best plaintiff's evidence only permits of an inference that plaintiff ran or walked into the side of the streetcar, if she and the streetcar collided, and it is insufficient to make a submissible case under the humanitarian doctrine. The contention ignores plaintiff's testimony which would authorize findings that she was and remained on defendant's northbound tracks while the streetcar was approaching for a distance of 200 or 150 feet, and testimony favorable to plaintiff as to her position on the intersection after the collision. Although the motorman was plaintiff's witness, his testimony that he saw no pedestrian as he approached the intersection presented a fact issue for the jury to determine according as to whether they accepted the testimony favorable to plaintiff or the motorman's testimony. One of defendant's witnesses testified that the streetcar stopped with its back end in the middle of Cleveland avenue and blocked the traffic. Lefkowitz v. Kansas City Pub. Serv. Co., Mo., 242 S. W. 2d 530, 532[3-5], citing cases; Brungs v. St. Louis Pub. Serv. Co., Mo. App., 235 S. W. 2d 81. The case of Bowers v. Columbia Terminals Co., Mo. App., 213 S. W. 2d 663, stressed by defendant, where the movements of deceased in the vicinity of the accident were not known is distinguishable on the facts, as well as plaintiff's cases of Raw v. Maddox, 230 Mo. App. 515, 93 S. W. 2d 282, 284[6, 7]; Hoock v. S. S. Kresge, Mo. App., 222 S. W. 2d 568; Schoen v. Plaza Express Co., Mo., 206 S. W. 2d 536; State ex rel. Wabash R. Co. v. Bland, 313 Mo. 246, 281 S. W. 690; Bates v. Brown Shoe Co., 342 Mo. 411, 116 S. W. 2d 31.

However, defendant also contends plaintiff is bound by certain testimony in her desposition, which defendant says she stated was true on cross-examination at the trial and is inconsistent with her testimony at the trial, there being no explanation covering the inconsistencies between her testimony in the deposition and at the trial. The following cases, wherein others are cited, are stressed: Hayes v. S. S. Kresge Co., Mo. App., 100 S. W. 2d 325, 328[3]; Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W. 2d 626, 633[12]; Harper v. St. Joseph Lead Co., 361 Mo. 129, 233 S. W. 2d 835, 839[9]; Krause v. Laverne Park Ass'n, Mo. App., 240 S. W. 2d 724, 727 [5].

Defendant directs our attention to testimony in plaintiff's deposition to the following effect: That plaintiff first saw the streetcar when she was in the middle of the street, and it was about 200 feet south of her and had completely rounded the corner at Shenandoah; that plaintiff stopped in the center or middle of the street and looked south; that she stopped to let a couple of automobiles go by; that the automobiles went by and she did not remember what then happened; that she did not remember moving at all; that she had stepped between the tracks when she next saw the streetcar; that it was then about 150 feet away,

and that she did not remember what she then did or whether she moved from that point. In connection with this cross-examination at the trial, plaintiff testified she did not recall many of the statements in the deposition, but that if she gave the testimony she meant it to be true and that it was true; that she believed it to be true; and also that she was not in the middle of the street when she first saw the streetcar but she saw it making the turn while she was standing on the curb; that it was not a fact that she stopped in the middle of the street to let the automobiles pass and then stepped onto the streetcar tracks, testifying that she did not move after the automobiles passed. When, in answer to a question, she started to explain her condition at the time the deposition was taken—"I was so sick and so upset, I couldn't—," counsel interrupted her.

We think the inconsistencies went only to the credibility of plaintiff and did not destroy her testimony at the trial. Other [74] witnesses described the tracks as being in the middle of the street; and it does not appear that the questions in the deposition were so framed as to call for the distinctions now attempted to be made out of plaintiff's answers. She estimated the streetcar was 150 feet from her when she stepped between the tracks and last saw the streetcar, as we read the deposition. Rothe v. Hull, 352 Mo. 926, 180 S. W. 2d 7, 11[7, 8]; Reeves v. Thompson, 357 Mo. 847, 211 S. W. 2d 23, 27[5-8]; Schonlau v. Terminal R. Ass'n, 357 Mo. 1108, 212 S. W. 2d 420, 423 [4-6]; McNatt v. Wabash R. Co., 341 Mo. 516, 108 S. W. 2d 33, 39[6].

Defendant's motorman was placed on the stand by plaintiff and defendant did not call him as a witness. There was evidence that five young people and two adults were passengers on the streetcar, and that the motorman secured the names of some of the passengers. Mr. Gragg, plaintiff's counsel, opened his closing argument to the jury with the statement: "* * * You now have just finished listening for 20 minutes to the only witness the streetcar company has had—.". Mr. Boas, defendant's counsel, moved for a mistrial "because of the prejudicial conduct of plaintiff's counsel in commenting upon the absence of witnesses on behalf of the defendant. * * *" Mr. Gragg: "I am not." Mr. Boas: "No other inference could be drawn"; also stating it is prejudicial to comment or draw any unfavorable inference on the failure of a party to produce witnesses under the new discovery code. Mr. Gragg: "I am commenting on the facts in this case." By the court: "The objection and motion are overruled." Thereupon Mr. Boas asked the court to instruct the jury to disregard plaintiff's counsel's statement "that the attorney for the defendant was the only witness that the defendant had because I was not a witness, and it is not based on any evidence in the case." To this request, the court stated the argument was within proper bounds and not prejudicial. Mr. Gragg (continuing his argument) thereupon stated: "Gentlemen of the jury, I am not commenting upon the witnesses

who weren't here. I am commenting—I said this, that Mr. Boas has made an excellent witness for his client, and that is the only testimony that you have before you.'' Mr. Boas' renewal of his objection was again overruled. Later, the following occurred: Mr. Gragg: ''* * * This young lady will never forget that day, you will. There is a great duty on Ed Gragg's shoulders and is going to pass to you presently, so I say to you the fact that there is no defense—You remember there is some testimony here that there were adults on that streetcar—.'' Mr. Boas again renewed his objection to the argument and this time the court sustained it; and, upon request, instructed the jury to disregard the remark ''that there were adults on the streetcar.''

There is nothing in this record, as contended here by plaintiff, establishing that the argument objected to may be considered proper retaliation to the argument of defendant's counsel. Defendant's objection to the argument was not overruled on that ground. The argument in Griffith v. Gardner, 358 Mo. 859, 217 S. W. 2d 519, 529-531, was sustained by a majority of the court mainly because it was in answer to opposing counsel's argument. If the names of the passengers were known to defendant and not known to plaintiff, plaintiff had available under the new code (§ 510.020, RSMo 1949) an expeditious and inexpensive method of procuring their names. State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S. W. 2d 907, 911 |10]; State ex rel. Kansas City Pub. Serv. Co. v. Cowan, 356 Mo. 674, 203 S. W. 2d 407; State ex rel. Millers Mut. F. Ins. Co. v. Caruthers, 360 Mo. 8, 226 S. W. 2d 711. There was no showing that these passengers were not as available to plaintiff as to defendant; and the holdings under the new code are that no unfavorable inference is to be drawn or comment made by counsel on account of the non-production of witnesses equally available. Belding v. St. Louis Pub. Serv. Co., 358 Mo. 491, 215 S. W. 2d 506, 514[19, 20]; O'Donnell v. St. Louis Pub. Serv. Co., Mo. App., 246 S. W. 2d 539, 544[4]. In the O'Donnell case the court told the jury no imputation was to be cast upon any party to the suit on account of the non-production of witnesses, but [75] overruled the objection interposed and refused to strike the argument and instruct the jury to disregard it. This was held insufficient. The Belding case overruled State ex rel. Myer v. Daues, 315 Mo. 186, 285 S. W. 986, which had overruled Myer v. Wells, Mo. App., 277 S. W. 585, 586[1], where the comment, much like the instant comment, was that a number of passengers on the streetcar involved in the accident, whose names had been taken by the defendant's employee, did not appear in court.

Plaintiff's case was exceedingly close on defendant's liability, although sufficient to make a case for the jury. Plaintiff remembered nothing after the automobiles passed her until she regained consciousness in the hospital. She did not know why she did not continue across the street. She did not state what struck her. Other witnesses

gave testimony from which the jury could infer plaintiff came in contact with the side of the streetcar, but no witness testified the streetcar struck plaintiff. The verdict in her favor was signed by only nine of the jurors. Plaintiff's argument that defendant's counsel, who did not testify, was defendant's only witness, was emphasized by it repetition and the comment that defendant's attorney had made an excellent witness, giving the only testimony before the jury on behalf of defendant. What was counsel's purpose other than to direct the jury's attention to the non-production of witnesses by defendant? The argument was not in accord with the evidence; but it was before the jury, with the sanction of the court, for consideration in their deliberations. Clearly a verdict other than the one appealed from could have been returned, and we may not say under the instant record that all doubts of the harmful effect of the argument are removed from the case.

    Plaintiff's sole verdict directing instruction should be redrafted. Plaintiff's humanitarian submission forestalled defendant's pleaded defense of plaintiff's contributory negligence. The instruction called for findings that plaintiff was on the intersection "in a position of imminent peril of being struck and injured by the forward movement of said streetcar"; that the operator saw or could have seen plaintiff "in the path of said streetcar and in such position of imminent peril of being struck," and that the operator could "have stopped said streetcar, or given a warning of its approach" and avoided injuring plaintiff, but did not in express terms limit a consideration of the acts of the operator to the time after plaintiff's imminent peril arose.

"Instructions should be clear declarations of the law applicable to the facts and if open to two or more constructions, one of which is at variance with the law, the instruction should be refused." Schipper v. Brashear Truck Co., Mo., 132 S. W. 2d 993, 996[9], 125 A. L. R. 674.

And, as to when the duty to act under the humanitarian doctrine arises court en banc in State ex rel. Fleming v. Bland, 322 Mo. 565, 572, 15 S. W. 2d 798, 800, 801, stated: "* * * no duty whatever arises under that doctrine, unless and until a situation of peril comes into existence"; and "when such peril arises the doctrine seizes upon the situation as it then exists and requires the one operating the dangerous instrumentality to exercise ordinary care * * *, and thereafter to avoid the infliction of the threatened injury, if he can do so with the means at hand and without jeopardizing the safety of himself and others." Emphasis supplied. Homan v. Missouri Pac. R. Co., 334 Mo. 61, 64 S. W. 2d 617, 624[13], citing cases; Zickefoose v. Thompson, 347 Mo. 579, 148 S. W. 2d 784, 791[10]; Buehler v. Festus Merc. Co., 343 Mo. 139, 119 S. W. 2d 961, 970[11]; Bootee v. Kansas City Pub. Serv. Co., 353 Mo. 716, 183 S. W. 2d 892, 895.

Plaintiff in her brief argues: "A position of imminent peril certainly existed during all the time plaintiff stood in the northbound

streetcar track and the streetcar bore down on her as it traversed the intervening 150 or 200 feet. There was a duty to warn plaintiff of the approach of the streetcar as she stood in its path. There was a duty to stop." Giving consideration to the circumstances in evidence attending plaintiff's injuries, the instruction is susceptible of the construction put upon it in [76] plaintiff's brief, which permits of a consideration of defendant's antecedent primary negligence and unduly extends the imminent peril zone. Defendant's failure to stop or to warn of the forward movement of the streetcar while 200 feet, or 150 feet, from plaintiff may have constituted primary negligence on the part of defendant to which plaintiff's contributory negligence would have constituted a defense. It was not humanitarian negligence under the facts of the instant case with defendant having the ability to stop the streetcar in sixty feet and plaintiff having the ability to step off the tracks in a second or two. Defendant's motorman had a right to assume plaintiff was paying reasonable attention to her surroundings while on the tracks and would proceed across or otherwise avoid the streetcar until she showed reasonable appearances of obliviousness. Clark v. Atchison, T. & S. F. R. Co., 319 Mo. 865, 6 S. W. 2d 954, 961[16, 17]; Johnson v. Kansas City Pub. Serv. Co., 358 Mo. 253, 214 S. W. 2d 5, 10[12]; Setser v. St. Louis Pub. Serv. Co., Mo. App., 209 S. W. 2d 746, 755; Poague v. Kurn, 346 Mo. 153, 140 S. W. 2d 13, 17[6, 7]; Cable v. Chicago, B. & Q. R. Co., 361 Mo. 766, 236 S. W. 2d 328, 335[5]; Martin v. Effrein, 359 Mo. 1150, 225 S. W. 2d 775, 778[9]. The instruction is so worded as to not necessarily restrict a consideration of the charged negligence to the time after plaintiff was in imminent peril. This is the effect of plaintiff's own interpretation of the instruction. The instruction should be redrafted. Harrow v. Kansas City Pub. Serv. Co., 361 Mo. 42, 233 S. W. 2d 644, 648; White v. Kansas City Pub. Serv. Co., 347 Mo. 895, 149 S. W. 2d 375, 377.

We need not develop the other issues in the briefs as they should not recur upon a new trial.

The judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.